**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIE LINDA MCCUSKER,**

               **Plaintiff,**　　　　　　**1:13-cv-1074**
　　　　　　　　　　　　　　　　　　　　　　**(GLS)**

               v.

**COMMISSIONER OF SOCIAL SECURITY,**

               **Defendant.**
_____

**APPEARANCES:**　　　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter M. Margolius　　　　　　PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, NY 12414

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN　　　　　GRAHAM MORRISON
United States Attorney　　　　　　　　　DAVID L. BROWN
100 South Clinton Street　　　　　　　　Special Assistant U.S. Attorneys
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Marie Linda McCusker challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering McCusker's arguments, the Commissioner's decision is affirmed and McCusker's complaint is dismissed.

## II. Background

On March 23, 2011 and March 29, 2011, McCusker filed applications for DIB and SSI, respectively, under the Social Security Act ("the Act"), alleging disability since July 26, 2006. (Tr.[1] at 67-68, 175-81, 182-88.) After her applications were denied, (*id.* at 123-38), McCusker requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 139), which was held on April 30, 2012, (*id.* at 39-64). On June 1, 2012, the ALJ issued an unfavorable decision denying the requested benefits, (*id.* at 14-38), which became the Commissioner's final determination upon the Social Security

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

Administration Appeals Council's denial of review, (*id.* at 1-6).

McCusker commenced the present action by filing her complaint on August 30, 2013, wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. Contentions

McCusker contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No.12 at 1, 3-6.) Specifically, McCusker claims that the ALJ erred in his step five determination because: (1) the Commissioner did not meet her burden of proof that jobs exist in significant numbers in the national economy; and (2) the vocational expert's (VE) testimony is not consistent with the Dictionary of Occupational Titles (DOT). (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 13 at 2-8.)

### IV. Facts

3

The court adopts the parties' undisputed factual recitations. (Dkt. No. 12 at 1-3; Dkt. No. 13 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

Before addressing McCusker's contentions, which are limited to the ALJ's step five analysis and determinations, the court briefly summarizes the ALJ's decision for context. As an initial matter, the ALJ determined that McCusker met the insured status requirements of the Act through December 31, 2012. (Tr. at 19.) At step one of the sequential analysis, the ALJ determined that McCusker had not engaged in substantial gainful

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the regulations governing SSI are omitted.

activity since July 26, 2006—her alleged disability onset date. (*Id.*) At step two, the ALJ determined that McCusker's chronic left knee pain, status post arthroscopic surgery, and adjustment disorder with depressed mood were severe impairments. (*Id.* at 19-20.) At step three, the ALJ determined that McCusker does not have an impairment or combination of impairments that meets or medically equals the severity of Listings 1.02 and 12.04 of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 20-22.) The ALJ then determined that McCusker has the residual functional capacity (RFC):

> to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except . . . limited to sedentary work that is simple and routine with a [specific vocational preparation] level of [one] or [two] with only occasional decision-making and changes in the work setting; lift and cary [ten] pounds frequently and [twenty] pounds occasionally; no working at heights or around moving machinery; would need to change positions every [thirty] minutes; and occasionally elevate legs for [fifteen] minutes at a time to waist level.

(*Id.* at 22-30.) At step four, the ALJ determined that McCusker is unable to perform any of her past relevant work. (*Id.* at 30.) Finally, at step five, the ALJ determined, with the aid of VE testimony, that there were a significant number of jobs that McCusker could perform, such as surveillance system

5

monitor, and, therefore, McCusker is not disabled within the meaning of the Act. (*Id.* at 30-32.) As discussed below, McCusker takes issue only with the ALJ's step five determination.

## A. Step Five Determination

McCusker claims that the ALJ's step five determination is legally deficient and unsupported by substantial evidence for two reasons, specifically: (1) the Commissioner did not meet her burden of proof that jobs exist in significant numbers in the national economy; and (2) the VE's testimony is inconsistent with the DOT. (Dkt. No. 12 at 1, 3-6.) The Commissioner counters, and the court agrees, that jobs exist in significant numbers that McCusker can perform, and that the VE's testimony was consistent with the DOT. (Dkt. No. 13 at 4-9.)

Where a claimant is able to demonstrate that her impairments prevent a return to past relevant work, as is the case here, (Tr. at 30), the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1560(c). Moreover, in making a step five ruling, an ALJ may rely on the Medical-Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P,

6

app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, when a claimant's nonexertional impairments "significantly limit the range of work permitted by h[er] exertional limitations," the Commissioner "must introduce the testimony of a [VE] (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).

The VE may testify as to the existence of jobs in the national economy and as to the claimant's ability to perform any of those jobs, given her functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00CV0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A VE's testimony is useful only if it addresses whether the particular claimant, with her limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the VE's testimony.

7

*Colon*, 2004 WL 1144059, at *6.  However, there must be "'substantial record evidence to support the assumption upon which the [VE] based [her] opinion.'"  *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)).

    1.    *Work Which Exists in the National Economy*

As relevant here, "'work which exists in the national economy' means work which exists in significant numbers either in the region where the individuals live or in several regions of the country."  SSR 82-53, 1982 WL 31374, at *3 (1982) (emphasis removed).  This definition is designed "to emphasize that . . . a type(s) of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'"  *Id.*  "Courts have generally held that what constitutes a 'significant' number is fairly minimal."  *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009).

Here, the VE testified that a claimant of McCusker's age, education, work experience, and RFC can perform the job of surveillance system monitor, and, relying on this testimony, the ALJ agreed.  (Tr. at 31-32, 58-60.)  Again relying on the VE's testimony, the ALJ concluded that there are

74,470 jobs in the nation, 2,250 jobs in New York State, and 100 jobs in the Capital District, which includes Albany, Schenectady, Troy, Renssalaer County, and Saratoga County. (*Id.* at 31, 59-60.) Citing no authority, legal or otherwise, McCusker claims that the Commissioner has not met her burden of proving that jobs exist in the national economy because the VE was only able to cite one job that McCusker could perform, when VE's typically "cite at least three occupations that are a match," and because the VE testified that there were no numbers recorded for the position of surveillance system monitor in Greene County, where McCusker resides.[3] (Dkt. No. 12 at 3-4.)

As to McCusker's contention that the Commissioner has not met her burden because the VE was only able to identify one job that McCusker could perform, the regulations provide that "[w]ork exists in the national

---

[3] Also citing no authority, legal or otherwise, McCusker argues that, despite being described as sedentary in the DOT, the position of surveillance system monitor is no longer a sedentary position because "[v]ery few, if any, employers ask employees to simply sit and watch a bank of monitors all day long," and, instead, "employers ask surveillance system monitors to do a wider variety of security-related tasks." (Dkt. No. 12 at 4.) McCusker also contends that, despite being identified as unskilled in the DOT, the position of surveillance system monitor is no longer unskilled because, "in the post 9/11 world, experienced and trained workers are needed," and, because many employees doing surveillance work are employed by the gambling and gaming industries, "[e]ffective monitoring in [those industries] requires training beyond what would be considered required for unskilled work." (*Id.*) Given the lack of citation to *any* authority, the court is left to believe that these conclusions are based on nothing other than McCusker's own speculation and assumptions, and the court, therefore, does not consider them further.

9

economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). Interpreting this regulation, the Second Circuit has stated that its language "suggests that a single occupation may constitute a sufficient occupational base to permit a claimant to make a work adjustment." *Nix v. Sullivan*, No. 90-2988, 1991 U.S. App. LEXIS 13707 at *12 (2d Cir. June 10, 1991); *see Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *5 (W.D.N.Y. Aug. 19, 2014) ("[C]ourts have repeatedly held that where a VE testifies that surveillance system monitor is the sole position a claimant can perform, the Commissioner's step [five] burden to show that the claimant could perform work existing in significant numbers has been satisfied.").

Further, as to McCusker's point that the Commissioner has not met her step five burden because there are no reported surveillance system monitor positions available in Greene County, the regulations provide that, in determining whether work exists in the national economy, "[i]t does not matter whether . . . [w]ork exists in the immediate area in which you live." 20 C.F.R. § 404.1566(a)(1). Indeed, several courts have held that the step

five burden has been met when the VE identified a significant number of surveillance system monitor positions available *regionally*.  *See, e.g.*, *Gray*, 2014 WL 4146880, at *5 (holding that step five burden was met where the VE testified that there were 16,763 surveillance system monitor jobs in the national economy and sixty-three in the Finger Lakes region); *Fox*, 2009 WL 367628, at *3 (concluding that the step five burden was met by surveillance system monitor position, with "a small percentage" less than 132,980 jobs nationally and 200 regionally); *Colon*, 2004 WL 1144059, at *8 (holding that the step five burden was satisfied by testimony that the claimant could perform a surveillance system monitor position, with 100,000 jobs nationally and 100 jobs regionally).  Thus, the VE's testimony that there are 74,470 jobs in the nation, 2,250 jobs in New York State, and, more specifically, 100 jobs in the Capital District, is sufficient to establish that work exists in the national economy which McCusker can perform, and the Commissioner has met her burden at step five.

    *2.    The VE's Testimony and the DOT*

Finally, McCusker argues that the ALJ improperly relied on VE testimony that conflicts with the DOT.  (Dkt. No. 12 at 4-6.)  On the other hand, the Commissioner argues that the VE's testimony was consistent

with the information contained in the DOT, and, further, the ALJ's step five determination is supported by substantial evidence. (Dkt. No. 13 at 6-8.) Again, the court agrees with the Commissioner.

Social Security Ruling 00-4p sets forth that the "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000). In the event of a conflict between the two, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.*

Again, here, the VE testified that a claimant of McCusker's age, education, work experience, and RFC can perform the job of surveillance system monitor. (Tr. at 58-60.) McCusker, however, argues that the ALJ's RFC finding that McCusker was limited to sedentary work that is simple and routine, with a specific vocational preparation (SVP) of one or two, and with only occasional decision making and changes in the work setting, (*id.* at 22), was inconsistent with the DOT definition that work as a surveillance system monitor requires reasoning at a level of three, meaning that the person must "[a]pply commonsense understanding to carry out instructions

12

furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations," Dictionary of Occupational Titles, Code 379.367-010, 1991 WL 673244 (4th ed., 1991). (Dkt. No. 12 at 4-6.) According to McCusker, such reasoning requirements conflict with her restriction to simple, routine, and low stress work, with only occasional decision making and changes in the work setting. (*Id.*; Tr. at 22.)

As an initial matter, consistent with the ALJ's RFC determination, the DOT classifies the surveillance system monitor occupation as having an SVP of two, which is anything beyond short demonstration, up to and including one month. (Tr. at 22); Dictionary of Occupational Titles, Code 379.367-010, 1991 WL 673244 (4th ed., 1991). Further, a number of courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple and low stress work. *See, e.g.*, *Reynolds v. Comm'r of Soc. Sec.*, No. 1:11-cv-00778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012) (holding that a limitation to "simple work" does not preclude a job that has a reasoning development level of two or three); *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (holding that reasoning levels of

13

two and three are not inconsistent with a limitation to short, simple instructions); *Cross v. Astrue*, No. 08-CV-0425, 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (finding no error in the ALJ's conclusion that a claimant limited to simple, low-stress, and entry-level work, with no complex decision-making, could perform jobs with a reasoning level of two or three); *see also Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (holding that level three reasoning was not inconsistent with the ability to perform only "simple work"); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding that two unskilled, level three reasoning jobs were not "complex").

Further, McCusker completed high school and two years of college. (Tr. at 43, 501.) In addition, consultative examiner Dr. Claude Schleuderer, Ph.D., opined that McCusker did not demonstrate "any difficulty with intellectual functioning," her "[m]emory and concentration w[ere] good," she "certainly has residual skills that could be exploited vocationally," and she has "no psychiatric disability that limits her employability." (*Id.* at 501-02.) Further, psychiatric consultant Dr. H. Ferrin opined that McCusker is not significantly limited in understanding, remembering, and carrying out simple and detailed instructions, maintaining attention and concentration for

14

extended periods, maintaining regular attendance and performing activities within a schedule, completing a normal workday and workweek without interruptions, or in responding appropriately to changes in the work setting. (*Id.* at 604-07.) Based on the foregoing, the job identified by the VE is not incompatible with the limitations established by the ALJ, and the ALJ's step five determination is supported by substantial evidence.

## B. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and McCusker's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 20, 2014
Albany, New York

*Gary L. Sharpe*
Chief Judge
U.S. District Court

15